RECEIVED
IN LAKE CHARLES, LA.

JUN - 9 2016

TONY R. MOORE. CLERK
BY _____
           DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | |
|---|---|
| **SHANE LEE FOSTER** | * **CIVIL ACTION NO. 2:15-cv-2094** |
| | * |
| | * |
| **v.** | * **JUDGE MINALDI** |
| | * |
| | * |
| **IVY WOODS, ET AL** | * **MAGISTRATE JUDGE KAY** |

*************************************************************************

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment (Rec. Doc. 16) filed by defendants

Sheriff Ivy Woods and Commander Christopher Ivey ("Sheriff Defendants"), a Motion for

Partial Summary Judgment (Rec. Doc. 24) filed by Shane Lee Foster, an Opposition (Rec. Doc.

22) filed by Foster, an Opposition (Rec. Doc. 27) filed by Sheriff Defendants, and a Reply (Rec.

Doc. 29) filed by Foster. For the following reasons, Sheriff Defendants' motion (Rec. Doc. 16)

will be **GRANTED**, and Foster's motion (Rec. Doc. 24) will be **DENIED**.

## FACTS & PROCEDURAL HISTORY

Shane Lee Foster, a private investigator licensed in Louisiana and employed by HUB

Enterprises, was assigned to perform surveillance on Trini Hargrave, a personal injury claimant.[1]

On the morning of May 15, 2015, Foster began surveilling the Hargrave residence from his

Chevrolet Tahoe SUV.[2] Sometime between 7:15 a.m. and 7:23 a.m., Trey Hargrave, Trini

Hargrave's son, left for school driving a Mercury SUV.[3] Foster saw the Mercury SUV departing

from the Hargrave residence and was unsure of who was driving it, so he proceeded to follow the

---

[1] Ex. A, Dep. of Shane Lee Foster (Rec. Doc. 24-2), at 6, 42; Statement of Uncontested Material Facts (Rec. Doc. 24-13) ¶ 6.
[2] Ex. A, Dep. of Shane Lee Foster (Rec. Doc. 24-2), at 61; Statement of Uncontested Material Facts (Rec. Doc. 16-1) ¶ 1a.
[3] Ex. A, Dep. of Trey Hargrave (Rec. Doc. 16-3), at 6, 16; Statement of Uncontested Material Facts (Rec. Doc. 24-13) ¶ 9.

vehicle.[4] Trey Hargrave testified that he noticed the Chevrolet Tahoe SUV slowly driving by his residence and saw the driver staring at him, so he called his mother and then his father to discuss the incident.[5]

A few minutes later, Trey Hargrave arrived at the Lake Arthur High School parking lot.[6] Foster followed the Mercury SUV into the school parking lot and pulled in a couple of rows behind the vehicle.[7] A sign in the school parking lot read "NO TRESPASSING UNAUTHORIZED PERSONS FOUND ON SCHOOL PROPERTY FROM DUSK TO DAWN WILL BE PROSECUTED."[8] Trey Hargrave testified that he watched the Chevrolet Tahoe SUV follow him into the school parking lot, and did not exit his vehicle because he felt threatened.[9] Trey saw Joe Woods, a fellow student and the son of Sheriff Ivy Woods, walking by and called him over to his car through a rolled down window and explained the situation.[10] Joe Woods called his father, Sheriff Woods, and gave the phone to Trey Hargrave who proceeded to tell Sheriff Woods about the Chevrolet Tahoe SUV.[11] In the meantime, Foster started to think the occupant of the Mercury SUV had grown suspicious, so he drove around to the front of the Mercury SUV for a better vantage point.[12] After realizing that the driver was not Trini Hargrove, Foster exited the parking lot.[13] Foster testified that he spent no more than five minutes in the parking lot, but Trey Hargrove testified that the Chevrolet Tahoe SUV was in the parking lot for roughly fifteen minutes.[14]

---

[4] Ex. A, Dep. of Shane Lee Foster (Rec. Doc. 24-2), at 54-55.
[5] Ex. A, Dep. of Trey Hargrave (Rec. Doc. 16-3), at 17-18, 26-31.
[6] *Id.* at 25.
[7] Ex. A, Dep. of Shane Lee Foster (Rec. Doc. 24-2), at 66-67.
[8] Statement of Uncontested Material Facts (Rec. Doc. 24-13) ¶ 20.
[9] Ex. A, Dep. of Trey Hargrave (Rec. Doc. 16-3), at 25-26, 31.
[10] *Id.* at 31-32.
[11] *Id.* at 32-33.
[12] Ex. A, Dep. of Shane Lee Foster (Rec. Doc. 24-2), at 72.
[13] *Id.* at 72-73.
[14] *Id.* at 72; Ex. A, Dep. of Trey Hargrave (Rec. Doc. 16-3), at 46.

After Foster left the school parking lot, Sheriff Woods followed him back to the area of the Hargrove residence.[15] Foster pulled onto a road off of Highway 26 to look at a map of the area, at which point Sheriff Woods activated the police lights on his vehicle and conducted an investigative stop.[16] Sheriff Woods instructed Foster to exit the vehicle, and shortly thereafter Deputy Derrick Miller arrived.[17] Foster provided Sheriff Woods with his concealed handgun permit and private investigator's license, and informed Sheriff Woods that he had a firearm in the center console of the Chevrolet Tahoe SUV.[18] Sheriff Woods and Foster discussed the firearm-free zone law, LA. REV. STAT. ANN. § 14:95.6, in regard to the high school parking lot incident, and eventually Foster was allowed to leave the scene.[19]

Foster decided to terminate the surveillance and return to the Lafayette area, but prior to leaving Jefferson Davis Parish he received a telephone call from Deputy Miller requesting that he go to the Jefferson Davis Parish Sheriff's office, and Foster complied.[20] Upon arriving, Foster was brought into a room with Sheriff Woods and Commander Christopher Ivey, and the firearm-free zone law, LA. REV. STAT. ANN. § 14:95.6, was discussed again.[21] Sheriff Woods then ordered the arrest of Foster for violating LA. REV. STAT. ANN. § 14:95.6.[22] Ultimately, the District Attorney decided not to pursue the criminal charges resulting from the May 15, 2015 incident.[23] The May 17, 2015, issue of the *Jennings Daily World* carried on its front page an article titled "PI busted with pistol after following student," which included a mug shot of Foster

---

[15] Ex. C, Dep. of Sheriff Ivy Woods (Rec. Doc. 16-5), at 18, 22.
[16] *Id.* at 23-25; Ex. A, Dep. of Shane Lee Foster (Rec. Doc. 24-2), at 75-76.
[17] Ex. C, Dep. of Sheriff Ivy Woods (Rec. Doc. 16-5), at 24-25; Ex. A, Dep. of Shane Lee Foster (Rec. Doc. 24-2), at 88.
[18] Ex. C, Dep. of Sheriff Ivy Woods (Rec. Doc. 16-5), at 24-25; Ex. A, Dep. of Shane Lee Foster (Rec. Doc. 24-2), at 83, 90.
[19] Ex. C, Dep. of Sheriff Ivy Woods (Rec. Doc. 16-5), at 26-27; Ex. A, Dep. of Shane Lee Foster (Rec. Doc. 24-2), at 89, 95.
[20] Ex. A, Dep. of Shane Lee Foster (Rec. Doc. 24-2), at 95-98.
[21] *Id.* at 100-102.
[22] *Id.* at 104-106.
[23] *See* Ex. C, Dep. of Sheriff Ivy Woods (Rec. Doc. 16-5), at 50.

and stated that Foster was "charged with carrying a firearm or dangerous weapon by a student or non-student on school property, at school-sponsored functions, or in a firearm-free zone."[24]

On July 24, 2015, Foster filed suit against Sheriff Woods and Commander Ivey, alleging that Sheriff Defendants are liable (1) under § 1983 because they lacked probable cause for the arrest, (2) under § 1983 for supervisory liability, (3) under Louisiana state law for false or wrongful arrest, (4) under Louisiana state law for negligent or intentional tortious conduct for failing to supervise or otherwise intervene to prevent the wrongful arrest of Foster, and (5) that Sheriff Woods is liable in his official capacity under Louisiana state law pursuant to the principle of *respondeat superior*.[25] On January 28, 2016, Foster filed a Second Amended Complaint further alleging that Sheriff Defendants are liable under Louisiana state law for ordering or participating in the wrongful arrest of Foster, and for defamation.[26] Sheriff Defendants filed their motion for summary judgment on March 21, 2016,[27] seeking summary judgment on all claims. Foster filed his motion for partial summary judgment on April 18, 2016, seeking summary judgment on all § 1983 claims and the state law claims for false or wrongful arrest.[28]

## LAW & ANALYSIS

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is said to be "genuine" only where a "reasonable jury could return a verdict for the non-moving party." *Dizer v. Dolgencorp, Inc.,* No. 3:10-cv-699, 2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (citing *Fordoche, Inc. v. Texaco, Inc.,* 463 F.3d 388, 392 (5th Cir. 2006)). "Rule 56[(a)] mandates the entry of summary judgment

---

[24] Ex. J, Aff. Of Shane Lee Foster (Rec. Doc. 24-11) ¶ 5; *see also* Ex. C, Newspaper Article (Rec. Doc. 24-11), at 5.
[25] Compl. (Rec. Doc. 1).
[26] Second Am. Compl (Rec. Doc. 15) ¶ 29.
[27] Mot. for Summ. J. (Rec. Doc. 16).
[28] Mot. for Partial Summ. J. (Rec. Doc. 16).

. . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Webber v. Christus Schumpert Health Sys.,* No. 10-1177, 2011 U.S. Dist. LEXIS 99235, at \*14 (W.D. La. Sept. 2, 2011) (citing *Patrick v. Ridge,* 394 F.3d 311, 315 (5th Cir. 2004)).

      In ruling upon a motion for summary judgment, the district court shall draw all inferences in a light most favorable to the nonmoving party. *Id.* at \*3 n. 1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (additional citation omitted)).  However, the court will not, in the absence of proof, "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).  "The non-movant cannot preclude summary judgment by raising 'some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of the evidence.'" *Cormier v. W&T Offshore, Inc.*, No. 10-1089, 2013 U.S. Dist. LEXIS 53416, at \*18-19 (W.D. La. Apr. 12, 2013) (citing *Little*, 37 F.3d at 1075).

### FEDERAL CLAIMS

      Sheriff Woods and Commander Ivey are entitled to qualified immunity from the § 1983 claims unless Foster is able to prove that they violated clearly established constitutional law. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[Q]ualified immunity—which shields Government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights, is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation." *Vincent v. City of Sulphur*, 28 F. Supp. 3d 626, 634 (W.D. La. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009)) (internal quotation marks omitted). In the Fifth Circuit, courts apply a two-step analysis when

determining whether a government official is shielded by qualified immunity. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). First, the court must determine whether the plaintiff has alleged the violation of a clearly established constitutional right. *Thompson v. Upshur Cty., TX*, 245 F.3d 447, 457 (5th Cir. 2001). If the allegations are sufficient, the court next determines whether the defendant's conduct was objectively reasonable in light of clearly established law. *Id.* The burden is on Foster to demonstrate that Sheriff Woods and Commander Ivey have violated clearly established constitutional law. *Salas*, 980 F.2d at 306.

Foster has a clearly established constitutional right to be free from arrest without probable cause. *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Day v. Louisiana*, No. 2:12-CV-02844, 2013 WL 3894025, at *7 (W.D. La. July 25, 2013) (quoting *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009)). An officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Foster was arrested because he followed Trey Hargrave into a high school parking lot with a gun in the console. Although the firearm-free zone law under which Foster was initially charged provides the definition of a firearm-free zone, that statute only prohibits covering, removing, defacing, altering, or destroying signs in a firearm-free zone, and thus it is inapplicable to the May 15, 2015 incident. *See* LA. REV. STAT. ANN. § 14:95.6. However, just because Sheriff Defendants identified the incorrect statute at the time of arrest does not preclude them from identifying another statute at a later time for which there may have been probable

cause. Under Louisiana law, illegal carrying of a weapon includes "[t]he intentional possession or use by any person of a dangerous weapon on a school campus during regular school hours or on a school bus." LA. REV. STAT. ANN. § 14:95(5)(a). The facts known to Sheriff Defendants at the time of Foster's arrest were sufficient for a reasonable person to conclude that Foster had illegally carried a weapon when he drove onto the high school parking lot with a gun in the console of his vehicle.

Foster raises two arguments as to why no reasonable person could believe he violated LA. REV. STAT. ANN. § 14:95(5)(a). First, Foster asserts that he was not on a school campus during regular school hours because Foster left the parking lot before the first bell rang at 7:45 a.m.[29] Even assuming that Foster left the parking lot before then, which is contested, this argument is unpersuasive. Students were arriving in the parking lot, preparing for and entering the school. This is sufficient for a reasonable police officer to believe that regular school hours had begun.

Second, Foster contends that a statutory ambiguity exists between LA. REV. STAT. ANN. § 14:95(5)(a) and LA. REV. STAT. ANN. § 14:95.2 that negates any possibility that Sheriff Woods and Commander Ivey had probable cause. LA. REV. STAT. ANN. § 14:95.2 states:

> A. Carrying a firearm, or dangerous weapon as defined in R.S. 14:2, by a student or nonstudent on school property, at a school sponsored function, or in a firearm-free zone is unlawful and shall be defined as possession of any firearm or dangerous weapon, on one's person, at any time while on a school campus, on school transportation, or at any school sponsored function in a specific designated area including but not limited to athletic competitions, dances, parties, or any extracurricular activities, or within one thousand feet of any school campus.
>
> . . .

---

[29] See Ex. I, Bell Schedule (Rec. Doc. 24-10).

7

> (C) The provisions of this Section shall not apply to:
>
> . . .
>
> (5) Any constitutionally protected activity which cannot be regulated by the state,
>
> such as a firearm contained entirely within a motor vehicle.

LA. REV. STAT. ANN. § 14:95.2. Although Foster is correct that the exception concerning any "constitutionally protected activity which cannot be regulated by the state, such as a firearm contained entirely within a motor vehicle" would preclude a reasonable officer from concluding that Foster violated LA. REV. STAT. ANN. § 14:95.2, it would not prevent a reasonable officer from finding that Foster violated LA. REV. STAT. ANN. § 14:95(5)(a). The formulation of probable cause does not require a reasonable officer to assume the role of judge and engage in statutory interpretation of potential ambiguities in the law. There is no exception in LA. REV. STAT. ANN. § 14:95(5)(a) for a firearm contained entirely within a motor vehicle. Sheriff Woods and Commander Ivey knew that Foster drove onto the high school parking lot with a gun in his console as students were entering the school at the time of his arrest, and these facts are sufficient for a reasonable officer to conclude that Foster violated LA. REV. STAT. ANN. § 14:95(5)(a). There was probable cause for the arrest of Foster,[30] and thus no clearly established constitutional right was violated. Therefore, both Sheriff Woods and Commander Ivey are entitled to qualified immunity for all of the § 1983 claims, and there can be no municipal liability.

## STATE LAW CLAIMS

"Probable cause to arrest is an absolute defense to any claim against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Brown v. City of Monroe*, 48,

---

[30] It is also likely that Sheriff Defendants had probable cause to arrest Foster for trespassing when he entered the high school parking lot. *See* LA. REV. STAT. ANN. § 14:63.

764 (La. App. 2 Cir. 2/26/14); 135 So.3d 792, 796 (citing *Harris v. Eckerd Corp.*, 35,135 (La. App. 2d Cir. 09/26/01); 796 So.2d 719). "Police officers have probable cause to arrest an individual when the facts and circumstances within their knowledge and of which they have reasonable trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense. *Id.* at 796-97 (citations omitted). The court has already found that no wrongful arrest occurred because probable cause existed for Foster's arrest, and thus his state law claims for false, improper, or wrongful arrest must be dismissed. Moreover, because Foster's negligent or intentional failure to supervise or intervene to prevent the wrongful arrest claims, negligent or intentional ordering or participating in the wrongful arrest claims, and *respondeat superior* claim are predicated upon a wrongful arrest, those claims must be dismissed as well.

Under Louisiana law, police officers are protected from defamation claims by the qualified privilege doctrine when they simply "report the fact of a criminal investigation and an arrest [even] if the person is cleared of the charges" so long as they do not add "injurious statements beyond the facts they relied upon for the showing of probable cause." *Dyas v. Shreveport Police Dept.*, 48,804 (La. App. 2 Cir. 2/26/14); 136 So.3d 897, 905 (quoting *Trentecosta v. Beck*, 96,2388 (La 10/21/97); 703 So.2d 552). Foster has not shown that Sheriff Defendants made any such injurious statements, and thus the defamation claims will also be dismissed.

## CONCLUSION

The court finds that there was probable cause for Foster's arrest, and thus Sheriff Defendants' motion for summary judgment will be **GRANTED** and Foster's motion for partial summary judgment will be **DENIED**.

Lake Charles, Louisiana, this _____ day of _____, 2016.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE